IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SCARLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-3324-CV-S-DGK |
| | ) | |
| THE SCHOOL OF THE OZARKS, INC. | ) | |
| d/b/a COLLEGE OF THE OZARKS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS IN LIMINE**

This lawsuit arises from allegations that Defendant College of the Ozarks discriminated against Plaintiff Christopher Scarlett, a student at the College, on the basis of his race. Now before the Court are the motions in limine filed by the parties (docs. 77, 78). The Court rules as follows:

**A.     Plaintiff's motion in limine.**

**1.     Witnesses that should have been identified in Rule 26 disclosures but were not shall be excluded.**

Scarlett requests the Court exclude any witnesses identified in the College's witness list who were not disclosed in the College's Rule 26 disclosures. The College joins in this request, but notes that Rule 26 does not require certain witnesses, such as impeachment witnesses, to be disclosed. Neither party has identified any particular witness they believe should be excluded.

The Court will exclude any witnesses that should have been identified pursuant to Rule 26, but were not. Witnesses who were not required to be disclosed under Rule 26, such as rebuttal witnesses, will not be excluded. They will, of course, be strictly limited to offering rebuttal testimony.

**2.      Matters admitted in response to requests for admission or in response to the motion for summary judgment are deemed conclusively established for trial purposes.**

The parties agree that matters admitted in response to requests for admission should be deemed admitted at trial. The Court also orders that any fact admitted for summary judgment purposes shall also be conclusively established for trial purposes. The parties are instructed to meet and confer before trial to compile a list of all such facts and submit them to the Court as a stipulation.

**3.      The admissibility of all law enforcement reports, accident reports, and misdemeanor charges is taken under advisement.**

Scarlett also requests that "any and all evidence, references to evidence, testimony or argument relating to misdemeanor trespass charges" against him be excluded. Scarlett contends the events relating to these charges occurred long after the events that gave rise to this lawsuit and do not pertain to Scarlett's auto accident in August 2004, thus they are irrelevant.

The College notes Scarlett seeks damages for humiliation, stress, depression, and alienation from family and church community. It argues that "law enforcement reports, accident reports, and Plaintiff's misdemeanor charges are relevant to Plaintiff's claims for non-economic damages" and showing alternate causation of these damages.

Unfortunately, the Court does not have sufficient information about this evidence to rule at this time on this portion of the motion. The Court takes this portion of the motion under advisement. Defendant shall approach the bench and obtain a ruling from the Court before introducing the topic of or mentioning any law enforcement reports, accident reports, or misdemeanor charges in the jury's presence.

## 4. Evidence of certain events preceding the August 2004 auto accident is excluded.

Scarlett moves to exclude evidence that before the accident (1) he was at a bar, (2) he consumed alcohol, and (3) he and a friend went to the home of two young women. Scarlett argues there is no evidence that the College or any of its officials had knowledge of these events before his deposition in 2010, thus these events could not have be the basis for the College's subsequent decisions taken against him. Scarlett contends the evidence is irrelevant or more prejudicial than probative.

The College claims that the evidence is relevant because (1) "[t]here are serious questions about whether the car wreck actually occurred;" and (2) the facts surrounding the car wreck tend to show an alternate cause for his non-economic damages. There is no merit to the first argument. Absent some indication that the College or its officials questioned whether an accident actually occurred prior to dismissing Scarlett from the College, the probative value of this evidence is questionable, and any probative value of such evidence is substantially outweighed by the danger of unfair prejudice. With respect to the second argument, although Defendant is entitled to put on evidence that there is an alternate cause for Scarlett's non-economic damages, whether Scarlett was cavorting with two young women before driving home the night of the accident does not establish an alternate cause for his non-economic damages.

Accordingly, evidence that before the accident Scarlett (1) was at a bar, (2) consumed alcohol, and then (3) he and a friend went to the home of two young women is inadmissible. Of course, evidence about what happened after the wreck, namely that when Scarlett told his father about it, he was very upset with him, is relevant and admissible.

This portion of the motion is granted.

**5.      Evidence that the car was not insured is admissible.**

Scarlett moves to exclude evidence concerning whether he had automobile insurance at the time of the accident.

Evidence that Scarlett did not insure the car is relevant to the issue of damages. It establishes alternate causation for Scarlett's alienation from his family because it tends to show that Scarlett's father might be angry with his son not just for wrecking the car, but for failing to insure it, thus leaving the family with a total loss on the car. Consequently, it is admissible.

This portion of the motion is denied.

**6.      The admissibility of Scarlett's current immigration status is taken under advisement.**

Scarlett moves to exclude evidence relating to his current immigration status on the grounds that it is irrelevant, or alternately, more prejudicial than probative.

The College replies that his immigration status is relevant to his damages, arguing that people working in the United States have different earning potential than people working in Jamaica, and that individuals who are in the United States illegally are not allowed to recover lost wages. Unfortunately, neither party has explained what his current status is or how Scarlett is calculating his lost wages damages. While his current immigration status may be relevant, the Court cannot tell from the existing record.

This issue is taken under advisement. Neither party shall introduce the subject of Plaintiff's current immigration status without first approaching the bench and obtaining a ruling from the Court.

**7.     Plaintiff's grades in the Drury M.B.A. program are admissible.**

Scarlett moves to exclude evidence that he has had to repeat one or more classes in Drury University's M.B.A. program on the grounds that the evidence is inadmissible, or alternately, more prejudicial than probative.  This evidence is admissible because it goes to damages relating to his lost earnings claim.  This portion of the motion is denied.

**8.     Evidence of Ebony Scarlett's experience at the College is admissible.**

Scarlett moves to exclude evidence that his sister, Ebony Scarlett, graduated without incident from the school on the grounds that her attendance at the school is too remote in time to be relevant.

Ebony Scarlett attended the College from January 1995 through May 1999.  Plaintiff began attending the College in January 2001.  This is not too remote in time to be relevant.  This portion of the motion is denied.

**B.     Defendant's motion in limine.**

**1.     Evidence of settlement negotiations shall be excluded.**

The parties agree on this point.  This portion of the motion is granted.

**2.     The subsequent written policy regarding disciplinary action in the College's work program is admissible only to show that the College had no written policy at the time Scarlett attended the College.**

The College moves to exclude a subsequent "clarification" of its written work program policies which states that:

> Failure to initially report to work or otherwise make satisfactory arrangements with the work area supervisor and/or the Dean of Work will result in appropriate disciplinary action, which can include dismissal from the work program.

The College describes this as a subsequent remedial measure and asks that it be excluded pursuant to FRE 407.

Rule 407 excludes evidence of remedial measures that have been taken after an injury or harm "allegedly caused by an event" to prove negligence, culpable conduct, a defect in a product or a product's design, or a need for a warning or instruction. The rule "does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." FRE 407. Defendant has not demonstrated that this evidence tends to establish that its previous conduct was culpable, but, assuming for the sake of argument it did, the Court finds that the written clarification could still be used to establish that the College had no written policy regarding the failure to initially report to work during Scarlett's time at the College. To avoid this problem the Court strongly encourages the parties to agree to a written stipulation that during Scarlett's time at the College, the College had no written policy regarding the consequences for failure to initially report to work.

This portion of the motion is denied.

**3. The Summer 2006 article allegedly published by the School of the Ozarks is admissible.**

The College moves to exclude an article about Dr. Mayburn Davidson's retirement that was purportedly published by the College. Davidson is quoted in the article recounting the story of a student, who was presumably white, who failed to appear at work for several weeks before Davidson called him into his office, reprimanded him, and then gave him a second chance. The College argues the article is hearsay.

6

A published statement in the College's publication is an admission by a party opponent and thus is not hearsay. Similarly, the statements made by Dean Davidson discussing specific incidents in his career in the service of the College are statements made in his representative capacity as the Dean of Work are also statements by a party opponent and are not hearsay when offered against the College. Consequently Dr. Davidson's statements in the article are admissible.

This portion of the motion is denied.

**4. The Office of Civil Rights August 22, 2005 letter and Resolution Agreement will be excluded. Other evidence of the OCR proceedings are taken under advisement.**

In February 2005 Scarlett filed a discrimination complaint with the OCR. The OCR investigated and found that, "It does not appear the College followed its procedure when terminating the [Scarlett] from employment." The OCR identified several white students who had work deficiencies similar to Scarlett but who were put on work probation. Scarlett was the only student who was immediately terminated from the program. The College contends that all evidence regarding disposition of the OCR complaint should be excluded as irrelevant, immaterial, and prejudicial.

"Administrative findings made with respect to claims of racial discrimination are admissible under Fed.R.Evid. 803(8)(C) in a federal trial de novo." *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984) (citing *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39 (1976)). While administrative reports may contain information that would be useful to the jury, "their probative value may be outweighed by problems that would result from their admission." *Johnson*, 734 F.2d at 1309. Such problems include a danger of unfair prejudice to the defendant and trial time that would be spent by the defendant in exposing the weaknesses of

7

the report would add unduly to the length of the trial. *Id.* Such reports are also properly excluded when "admitting the report . . . would amount to admitting the opinions of an expert witness as to what conclusions the jury should draw, even though the jury had the opportunity and the ability to draw its own conclusions from the evidence presented regarding disparate treatment." *Id.*

The OCR letter in this case largely repeats the evidence Scarlett will present to the jury at trial. The letter's impact comes from a few conclusory sentences in which the OCR concludes that Scarlett received disparate treatment. The Court is concerned that admitting the report would be tantamount to admitting the opinion of the OCR about what conclusion the jury should draw. Consequently the Court will not admit the August 22, 2005 letter and Resolution Agreement. As for other evidence relating to the OCR investigation, the Court has not had an opportunity to review it and so takes this portion of the motion under advisement.

**5.     The December 13, 2004 letter from Ms. Davis to Dr. Keeter is excluded as hearsay.**

Plaintiff's suggest the December 13, 2004 letter from Angie Davis to Dr. Keeter is not hearsay, but in any event the letter is admissible to explain the "context" of Scarlett's readmission to the College.

The Court finds the letter is hearsay, and to the degree the letter is offered for some other purpose than for the truth of the matter asserted, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. The letter will be excluded.

**6.     The purported transcript of a conversation between Ms. Davis and Dr. Keeter is excluded.**

The College contends that a purported transcript of a meeting between Ms. Davis and Dr. Keeter should be excluded under FRE 1002 because the original recording is required to prove

its contents, and that transcript contains hearsay. The College also complains that the recording has not been produced to the College. Scarlett has not responded to this portion of the motion, so the Court deems it conceded. The transcript will be excluded.

**7. Evidence of Dr. Davidson allegedly confronting Plaintiff while he was playing basketball after his readmission is relevant.**

The College contends that evidence that after Scarlett was readmitted to the College Dr. Davidson saw him playing basketball and confronted him is irrelevant. The Court finds the evidence is probative as to whether Dr. Davidson's stated reasons for dismissing Scarlett from the work program were pretextual. The College's objection go to the weight of the evidence, not its admissibility. This portion of the motion is denied.

**8. The College's treatment of Wiley, the basketball players, Aaron Schaffner, and other students will not be excluded as a matter of law.**

The College argues that Scarlett has failed to establish that some of the white students he alleges were treated differently were similarly situated, and therefore the evidence concerning these individuals should be excluded as a matter of law.

The Court notes that the College has not cited any caselaw supporting its position, and that the OCR previously found that several white students who were treated differently were similarly situated. Again, the College's arguments go to the weight this evidence should be given, not its admissibility. Accordingly, this portion of the motion is denied.

**9. Evidence related to punitive damages.**

The College notes that punitive damages have not been pled in this case, but does not connect this observation to a request that any particular piece of evidence or testimony should be excluded. The Court takes this portion of the motion under advisement.

**10. Evidence of non-economic compensatory damages is admissible.**

The College contends that non-economic compensatory damages may not be recovered. The Court recently addressed this argument in its summary judgment order and held that Scarlett could recover such damages on his Title VI claims. Accordingly, this portion of the motion is denied.

**11 – 21.  Boilerplate issues.**

The balance of Defendant's motion seeks to prevent the Plaintiff from doing what the Federal Rules of Evidence, controlling Eighth Circuit caselaw, and this Court's Rules of Trial already preclude any party from doing, things like arguing the case during voir dire, making speaking objections, or having one witness vouch for the credibility of another witness. With the exception of asking that Plaintiff not mention the size or location of defense counsel's law firm, or the number of attorneys employed there, Defendant has not raised this motion with respect to any particular piece of evidence or testimony.

The Court instructs both parties not to mention the size, location, or number of attorneys employed by any law firm connected to this case. The balance of this portion of the motion is taken under advisement.

**IT IS SO ORDERED.**

Date:   February 7, 2011                             /s/ Greg Kays
                                                                GREG KAYS, JUDGE
                                                                UNITED STATES DISTRICT COURT